On petitions to review ballot title filed March 31 (S062154), and April 1 (S062157)(S062158), considered and under advisement May 20, ballot title referred to Attorney General for modification May 30, case dismissed as moot June 10, 2014 (355 Or 669)

Elspeth McCANN,
*Petitioner,*

*v.*

Ellen ROSENBLUM,
Attorney General,
State of Oregon,
*Respondent.*

Paul ROMAIN
and Ronald R. Dodge,
*Petitioners,*

*v.*

Ellen ROSENBLUM,
Attorney General,
State of Oregon,
*Respondent.*

Lauren G. R. JOHNSON
and Lynn T. Gust,
*Petitioners,*

*v.*

Ellen ROSENBLUM,
Attorney General,
State of Oregon,
*Respondent.*

(SC S062154 (Control), SC S062157, S062158)

326 P3d 1203

Steven C. Berman, Stoll Stoll Berne Lokting & Shlachter, PC, Portland, filed the petition for review on behalf of petitioner McCann.

Paul R. Romain, The Romain Group, LLC, Portland, filed the petition for review on behalf of petitioners Romain and Dodge. With him on the petition was Margaret E. Schroeder, Black Helterline, LLP, Portland.

John A. DiLorenzo, Jr., Davis Wright Tremaine LLP, Portland, filed the petition for review on behalf of petitioners Johnson and Gust.

Matthew J. Lysne, Senior Assistant Attorney General, Salem, filed the answering memorandum. With him on the memorandum were Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

KISTLER, J.

**KISTLER, J.**

In this consolidated ballot title case, three sets of petitioners have asked us to review the ballot title for Initiative Petition 58 (2014). *See* ORS 250.085(2) (specifying who may petition for review of certified ballot titles).[1] We review ballot titles for substantial compliance with ORS 250.035(2). *See* ORS 250.085(5) (stating standard of review). For the reasons explained below, we refer the ballot title to the Attorney General for modification.

Initiative Petition 58 (IP 58) is essentially identical to Initiative Petition 47 (IP 47), which we considered in *McCann v. Rosenblum*, 355 Or 256, 323 P3d 955 (2014). Both measures would change the way that liquor is sold in Oregon by "eliminat[ing] the current system of state-licensed liquor stores" and allowing "'holders of distilled liquor self-distribution permits' (essentially wholesalers) to distribute liquor to 'qualified retailers,' who would, in turn, sell the liquor to the public." *See McCann*, 355 Or at 258 (explaining IP 47). They would also replace the current markup system with a "revenue replacement fee" on wholesalers. Under both measures, wholesalers would pay the Oregon Liquor Control Commission 71.7% of the wholesale price of liquor and a small fee for each container. *See id.* at 259. After the first year of sales, a "Legislative Revenue Officer" would determine whether the amount of revenue generated under the new system fell within an acceptable range and, if necessary, make a one-time adjustment to the 71.7% rate. *See id.* at 259-60. Both measures make the same major changes to the existing system for selling liquor.[2]

The Attorney General certified the following ballot title for IP 58:

---

[1] McCann filed the petition in S062154; Romain and Dodge, the petition in S062157; and Johnson and Gust, the petition in S062158.

[2] The two measures differ in only minor details. For example, both measures would automatically reduce the initial per-container fee from $.75 to $.25 in 2017. Unlike IP 47, IP 58 expressly states that "the Legislative Assembly [has the authority] to retain or extend the portion of the per bottle" fee beyond 2017. IP 58 § 16(b). IP 58 thus expressly recognizes the legislature's inherent authority while IP 47 does not.

**"Allows qualified retail stores to sell liquor; current price markup replaced by wholesale sales tax**

**"Result of 'Yes' Vote**:   "Yes" vote expands retail sales of liquor by qualified retailers; current price markup replaced by wholesale sales tax; establishes regulatory requirements for sales and distribution.

**"Result of 'No' Vote**:   "No" vote retains the current system of retail sales of liquor exclusively through Oregon Liquor Control Commission agents, retains price markup for costs and taxes.

**"Summary**:   Under current law, retail sales of liquor are made exclusively by retail sale agents of the Oregon Liquor Control Commission (OLCC). Price determined by multiplying cost/case by 1.798, adding operation and other costs. Measure would expand the number of retailers; current agreements with retail sales agents would be terminated, subject to a right to continue to operate. Current beer/wine retailers over 10,000 square feet would qualify as liquor retailers, provided they are in compliance with all liquor laws and have successfully completed the responsible vendor program. Current markup of prices replaced by 71.7% wholesale sales tax, plus $0.75/bottle tax; taxes adjusted in 2017; establishes minimum price. Creates Oregon Distilled Liquor Board to encourage industry; OLCC retains regulatory functions. Other provisions."

The ballot title for IP 58 is virtually identical to the modified ballot title that this court recently certified for IP 47, and we have resolved almost all the objections that petitioners now raise to the ballot title for IP 58 in approving the modified ballot title for IP 47. The two ballot titles do differ, however, in one respect that gives rise to two related but separate objections. Both the caption and the "yes" vote result statement in the ballot title for IP 58 describe the "revenue replacement fee" as a "wholesale sales tax." Petitioners Johnson and Gust contend that the ballot title should not describe what IP 58 refers to as a "fee" as a "tax." Alternatively, they argue that, even if describing the revenue replacement fee as a tax is permissible, the ballot title should not describe it as a "sales tax."

Although the use of the phrase "wholesale sales tax" is unique to IP 58, we considered and resolved petitioners'

initial objection in *McCann* and also touched on their alternative objection. *See* 355 Or at 261-62. Regarding the initial objection, we held that, in light of the long-standing distinction between a fee and a tax and the manner in which the "revenue replacement fee" would operate, the Attorney General's use of the word "tax" to describe the revenue replacement fee substantially complied with her obligation to describe the proposed measure accurately. *Id.* That holding answers Johnson and Gust's initial objection to the use of the phrase "wholesale sales tax."

Regarding their alternative objection, we observed in *McCann* that the use of the word "'taxes,' without more, is misleading because it does not identify who is responsible initially for paying the tax." *Id.* at 263. We explained that, "[b]ecause wholesalers are required to pay IP 47's 'revenue replacement' tax initially, the word 'taxes' should be modified to indicate that fact. One way of doing so would be to describe it as a 'wholesale tax.'" *Id.* We added in a footnote:

> "We note that a pending ballot title for Initiative Petition 58 (2014) uses similar wording to indicate that wholesalers will pay the tax. Care should be taken, however, to avoid suggesting that the wholesale tax is a sales tax that would fall initially on consumers."

*Id.* at 263 n 4.

The Attorney General certified the ballot title for IP 58 before we issued our opinion in *McCann*, and Johnson and Gust argue that the phrase "wholesale sales tax" does not avoid the problem that we noted in our opinion. In their view, the reference to a "wholesale sales tax" in the ballot title for IP 58 is confusing. They also contend that the phrase "sales tax" is politically charged and should be avoided.

As we noted in *McCann*, the phrase "sales tax" has more potential to confuse voters than to describe IP 47, and by extension IP 58, accurately. Although it is true that IP 58 assesses a tax on sales—namely, sales between wholesalers and retailers—and to that extent qualifies as a "sales tax," we cannot overlook Johnson and Gust's point that the phrase "sales tax" is so commonly associated with a tax imposed at the point of a retail sale that the use of the phrase

"wholesale sales tax" may do more to confuse matters than clarify them. *See McCann,* 355 Or at 263 n 4 (so noting). For that reason, we agree with Johnson and Gust's objection. We note, as we did in *McCann,* that that the phrase "wholesale tax" reduces the potential for confusion.[3] Accordingly, we refer the caption and "yes" vote result statement to the Attorney General for modification.

Ballot title referred to Attorney General for modification.

---

[3] Under IP 58, the "revenue replacement" tax consists of two components—a small per-container tax and "71.7 percent of the price for which the [wholesaler] sells the distilled liquor." IP 58 § 16. The second component of the tax—the component based on a percentage of the wholesale price—is the larger of the two and the more important to convey to voters.